IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE ARANDA, the
beneficiary of the claim of
Linda Clark, deceased,

        Plaintiff,

  v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security Administration,

        Defendant.

CV. 08-340-MA

OPINION AND ORDER

BRUCE BREWER
Attorney At Law
419 5th Street
Oregon City, Oregon 97045

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, Oregon 97204-2902

    Attorneys for Defendant

MARSH, Judge

1 -- OPINION AND ORDER

Plaintiff, Stephanie Aranda, brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner denying Linda Clark's ("Clark") application for disability insurance benefits under Title II of the Social Security Act. Plaintiff is Clark's surviving daughter. I have jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure that the Commissioner applied the proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222 (9th Cir. 2009); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray, 554 F.3d at 1222 (internal quotations omitted); Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). I consider the record as a whole, weighing both the evidence that supports, and the evidence that detracts from, the Commissioner's conclusion. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE ALJ'S FINDINGS

This matter was before the Administrative Law Judge (ALJ) for a second time, pursuant to a remand by this court directing the ALJ

to further develop the record and consider after-acquired medical evidence. Clark v. Barnhart, 04-1843-AS; Admin. R. at 328-51.

Clark originally filed her application for disability insurance benefits on July 19, 2002, alleging disability from March 31, 1995, through her date last insured of December 31, 2001, due to depression, social problems, and memory problems. At the first hearing, on November 19, 2003, the ALJ heard the testimony of Ms. Clark; Dr. John B. Nance, a medical expert; and Gail E. Young, a vocational expert. Id. at 16-70.

On February 4, 2007, Clark died as the result of the toxic effects of a methadone overdose. Id. at 387. On February 28, 2007, the ALJ held the second hearing at which Nancy E. Bloom, an impartial vocational expert, provided testimony, and the ALJ considered additional medical evidence, including a psychological assessment by Dr. Paul Stoltzfus. Id. at 465-75.

The ALJ made his decision using the five-step sequential process established by the Commissioner. 20 C.F.R. §§ 404.1520 & 404.1520a; Bray, 554 F.3d at 1222. The ALJ concluded that (1) Clark had not performed substantial gainful activity from March 31, 1995, through her date last insured of December 31, 2001; (2) Clark suffered from severe impairments, namely Major Depressive Disorder, an Anxiety Disorder, and alcohol abuse; and (3) the impairments did not singly or in combination meet or medically

equal the criteria of listings 12.04, 12.06 or 12.09 of 20 C.F.R. § 404, Subpart P, App. 1. Admin. R. at 321-22.

In so holding, the ALJ rated the severity of Clark's mental impairments as follows: mild restriction of activities of daily life; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. Id. (applying 20 C.F.R., Part 404, Subpart P, App. 1, 12.01 "paragraph B" criteria).

At step four of the sequential analysis, the ALJ concluded that Clark was able to do past relevant work as an electronics assembler and factory worker. Id. at 326. The ALJ found that Clark was (1) slightly impaired in her abilities to (a) understand, remember and carry out short, simple instructions, and (b) interact appropriately with supervisors; (2) moderately impaired in her abilities to (a) understand, remember and carry out detailed instructions, (b) make judgments on simple work-related decisions, (c) interact appropriately with co-workers, and (d) respond appropriately to work pressures and changes in a routine work setting; and (3) markedly impaired in her ability to interact appropriately with the public. Id. at 323.

In evaluating Clark's residual functional capacity, the ALJ expressly adopted the discussion of the medical evidence and lay witness statements concerning Clark's residual functional capacity from the first hearing. Id. at 324. The ALJ opined that although

Clark's medically determinable impairments reasonably could be expected to produce the alleged symptoms, "the claimant was not entirely credible as to the "intensity, persistence and limiting effects of these symptoms." Id. at 23 & 324.

The ALJ gave the opinion of treating psychiatrist Dr. George Suckow, "little weight" given the fact that he did not conduct any psychological testing; his records contain few objective findings, and he "consistently rated claimant's GAF at 40 to 45 over different periods of time despite the fact that on several occasions he noted that she was stable, happier, more pleasant, more agreeable, and was doing well on medications." Id. at 24 & 324-25. The ALJ accorded the assessment of Dr. Paul Stoltzfus, an examining psychologist, significant weight because it was based on objective findings and a thorough review of the complete record. Id. at 325-26.

## DISCUSSION

Plaintiff claims that the ALJ erred at step four, by concluding that Clark was able to perform work which she had performed in the past. Plaintiff complains that the ALJ improperly rejected the opinion of Clark's long-time treating psychiatrist in favor of the opinion of Dr. Stoltzfus.

I. **Medical Opinions**.

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion

5 -- OPINION AND ORDER

carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may rely on the medical opinion of a non-treating doctor, instead of the contrary opinion of a treating doctor, only if he provides specific and legitimate reasons supported by substantial evidence in the record. Tommasetti, 533 F.3d at 1041; Orn, 495 F.3d at 628; Holohan, 246 F.3d at 1202. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallenes v. Bowen, 881 F.2d 747, 551 (9th Cir. 1989).

The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. Bray, 554 F.3d at 1228; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

A.  Initial Complaints of Depression.

In July 7, 1994, Clark reported to Dr. Portirio Pena, Jr., a four-month history of depressive symptoms, including poor sleep, appetite, concentration and memory; and feelings of hopelessness. Clark denied any previous history of depression. Admin. R. at 191-92. In April, 1995, Clark reported that she had lost her job. She was sleeping well, had "been handling stress well secondary to

medications," and her concentration and memory were good. Id. at 189.

In May, 1996, Clark complained of "multiple stressors" in the last three months involving her family. She complained of poor sleeping, fatigue, feelings of hopelessness, and crying spells. Id. at 185. By December, 1996, Clark was still feeling depressed, but reported her symptoms as stable and not worsening. Id. at 180. On March 17, 1999, Clark reported that her depression had worsened over the last two months after moving to Salem. On May 20, 1999, her care was transferred to the West Salem Mental Health Clinic.

On June 16, 1999, Karen Keller, MA, conducted an intake interview of Clark at the West Salem Clinic. Keller diagnosed major depression, alcohol dependence, insomnia, chronic fatigue, and gave Clark a global assessment of functioning (GAF) score of 45. Id. at 249-50.

**B. Dr. Suckow.**

Ms. Clark began seeing Dr. Suckow on July 1, 1999, at the West Salem Clinic, for medication management. Dr. Suckow diagnosed Clark with dysthymia r/o, major depression, and substance abuse by history. Dr. Suckow gave Clark a GAF score of 60. Id. at 237-39. Dr. Suckow prescribed Celexa for her depression, and Temazepam for insomnia.

On July 22, 1999, Clark returned to the clinic, advising Dr. Suckow that she was functioning better and "seemed pretty stable."

7 -- OPINION AND ORDER

Id. at 236. Dr. Suckow reduced Clark's GAF from 60 to 45 without explanation. From September 2, 1999, through December 27, 2000, Clark met with Dr. Suckow nine times for medication management. He consistently gave her a GAF score of 45. Id. at 227-35. On February 14, 2001, Dr. Suckow increased Clark's GAF score to 60, although the only entry in the medical records was Clark's complaint that her medication "really isn't helping." Id. at 226. He reduced Clark's GAF score back to 45 on July 23, 2001, noting that Clark "looks pretty good and seems to be doing fairly well." Id. at 224.

Dr. Suckow gave Clark a GAF score of 45 on October 17, 2001, and January 3, 2002, with nothing remarkable noted in her records. Id. at 223-221. On April 15, 2002, Dr. Suckow again gave Clark a GAF score of 45, noting a visible change in her behavior:

> Linda returns to the clinic as scheduled.
>
> She was visibly very anxious today and depressed. She has been having a very difficult time with her significant other. He apparently has been threatening to her, telling her she has to leave from time-to-time, knowing full well that she has no place to go. She feels hopeless and helpless. She can't work, she can't concentrate. She is trying to get an application together for Social Security. I helped her fill out part of it today. I noticed in the office that she was very impaired in terms of her ability to concentrate. For example, she wold pick up a prescription that was written for her and instead of putting it in her purse would lay it on the chair beside her, then fumble with something else, and then go back and get the prescription. And it took her two or three tries to get the prescription into her purse. She can't seem to keep things together very well.

> She says her significant other has been verbally very abusive and it just makes it difficult.
>
> She has had trouble like this ever since her first psychiatric breakdown back in 1994. She hasn't worked since then because she can't concentrate and she can't function around people.
>
> * * * * *
>
> I don't think this lady is capable of employment and I encouraged her to follow through with the Social Security application. Id. at 221.

On June 6, 2002, and July 8, 2002, Dr. Suckow gave Clark a GAF score of 45, with notations dealing primarily with Clark's financial situation. Id. at 219-20. In August and November, 2002, Dr. Suckow increased Clark's GAF score to 54, indicating that "[t]he only problem she's having is she can't sleep." Id. at 218 & 442.

On March 24, 2003, Dr. Suckow reduced Clark's GAF score to 45, noting that "[s]he seems to be getting along reasonably well." Id. at 308. He opined that she is "not capable of gainful employment" because "[s]he doesn't have the stamina or the follow through for it", and "has difficulty meeting with the public and managing relationships with coworkers." Id. at 305 & 308.

Dr. Suckow consistently gave Clark a GAF score of 45, until February 11, 2004, when he reduced it to 40 with no explanation. Id. at 309-12, 437-41. On January 3, 2005, he increased her GAF score back to 45, where it remained until she was dismissed from the Clinic for non-payment in September, 2005. Id. at 424-31. In

9 -- OPINION AND ORDER

2006, Dr. Suckow opined that Clark was disabled, and that he held this opinion as of March 22, 2000:

> In my opinion, Ms. Clark is disabled. She has consistently, throughout the time that I have known her, had difficulty understanding and remembering detailed instructions, carrying out detailed instructions, acting appropriately with co-workers, responding appropriately to changes in a work setting that are routine, making judgments on simple work related decisions, and interacting appropriately with the public. She is very limited in her ability to accept constructive criticism without loss of emotional control. *All of those would fall in the markedly limited category*, except she is extremely limited in her ability to interact appropriately with supervisors and respond to changes in a work setting that are routine. Her GAF is 45.
>
> In response to your specific question, I noted on 3/22/00 that I supported her disability claim and that at that time all of the foregoing were limited as indicated above. Id. at 443 (emphasis added).

C.   **Dr. Stoltzfus**.

On June 29, 2006, Psychologist Paul Stoltzfus administered the Minnesota Multiphasic Personality Inventory to Clark. Additionally, he reviewed Clark's medical records from April, 1995, to December, 2004; and Dr. Suckow's medical opinion quoted above. Id. at 444. Dr. Stoltzfus reported the results of Clark's MMPI as follows:

> Responses on the Minnesota Multiphasic Personality Inventory yielded a completely invalid profile. The F scale, a measure of symptom exaggeration was unbelievably elevated (F-131, K-37). No reasonable interpretation could be made of the test results because the test was grossly invalidated. Nine of the ten basic scales were significantly elevated. At worst, these validity scores are indicative of malingering. A kinder interpretation is that Ms. Clark is exaggerating legitimate mental

health problems completely out of proportion of the actual severity. Either way, she is not being truthful in symptom reporting. Id. at 447.

Based upon his review of Clark's medical records from 1995 through 2001, Dr. Stoltzfus, rated her residual functional capacity as follows: (1) *slightly impaired* in her abilities to understand, remember and carry out short, simple instructions and interact appropriately with supervisors; (2) *moderately impaired* in her abilities to (a) understand, remember and carry out detailed instructions, (b) make judgments on simple work-related decisions, and (c) interact appropriately with co-workers, and (d) respond appropriately to work pressures and changes in routine work setting; and (3) *markedly impaired* in her ability to interact appropriately with the public. Id. at 448-49 (emphasis added).

## II. Analysis.

Because Dr. Suckow and Dr. Stoltzfus rendered contrary findings regarding Clark's work-related restrictions, the ALJ was required to provide specific and legitimate reasons for according Dr. Suckow's opinion "little weight." Bray, 554 F.3d at 1228; Bayliss, 427 F.3d at 1216; Thomas, 278 F.3d at 957. A review of the ALJ's decision reveals that he did.

The ALJ noted that Dr. Suckow's opinion was not well supported by psychological testing, contained few objective findings, and that he "consistently rated claimant's GAF at 40 to 45 over different periods of time despite the fact that on several

occasions he noted that she was stable, happier, more pleasant, more agreeable, and was doing well on medications." Id. at 24 & 324-25 (incorporating findings from first hearing). In his 2003 decision, the ALJ expounded on this deficiency:

> Dr. Suckow did not conduct any testing of the claimant's mental abilities. I have considered his reports, but they contain few objective findings and little, if any, testing, as noted by Dr. Nance. There is very little evidence in Ms. Clark's file to support her claims and, what evidence exists, cannot be found fully credible because of the lack of objective evidence. Although the claimant suffers some limitations, there is insufficient evidence to support her allegations of not being able to work, especially because she worked with the same limits now believed disabling. Id. at 24.

In contrast, the ALJ concluded that Dr. Stoltzfus' assessment was based on objective findings and a thorough review of the complete record. I reject plaintiff's suggestion that Dr. Stoltzfus should be treated as a non-examining physician, because he met with Clark only once, and that meeting occurred 4 1/2 years after Clark's date last insured. It is well settled that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the claimant's pre-expiration condition. Lester, 81 F.3d at 832; Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988). Moreover, although the retrospective nature of Dr. Stoltzfus' assessment may be relevant to its relative weight, Dr. Suckow's opinion suffers from a similar deficiency given the fact that Clark alleged disability beginning

March, 1995, and Dr. Suckow did not begin managing her medication until July, 1999.

In sum, I conclude that the ALJ provided specific and legitimate reasons supported by substantial evidence for giving Dr. Suckow's opinion little weight. Accordingly, the decision of the Commissioner is affirmed.

## CONCLUSION

The Commissioner's decision that Ms. Clark was not disabled under Title II of the Social Security Act, on the date last insured, is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED, and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this 22 day of June, 2009.

Malcolm F. Marsh
United States District Judge

13 -- OPINION AND ORDER